IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JASON RAY SMOTHERS                                                    PLAINTIFF

                v.                Civil No. 3:21-cv-03013-TLB-MEF

CORPORAL GENE ATWELL;
SERGEANT WADE WILLIS;
JAILER TREVOR ATWELL; and
JAIL ADMINISTRATOR JASON DAY                                    DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by Plaintiff, Jason R. Smothers ("Smothers"), pursuant to 42 U.S.C. § 1983.   Smothers proceeds *pro se* and *in forma pauperis* ("IFP").   Smothers contends his constitutional rights were violated in a number of ways when he was housed with an inmate who was known to make sexual advances against cell-mates and when excessive force was used against him.   Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court on the Motion for Summary Judgment (ECF No. 35) filed by the Defendants.   Smothers has responded.   (ECF Nos. 40, 46, 48).   Defendants have replied. (ECF Nos. 43, 47).   The Motion is ready for decision.

### I.        BACKGROUND

On March 23, 2020, Smothers was booked into the Boone County Detention Center ("BCDC") on pending criminal charges of burglary and rape.   (ECF No. 37-2 at 4).   On approximately June 20, 2020, Smothers was moved by Sergeant Willis from his cell, B-10, in the

1

sex offenders' pod, to a cell, B-1, occupied by inmate Chris Wheeler ("Wheeler").   (ECF No. 37-3 at 24; ECF No. 37-11 at 8-9).   The pod for sex offenders had two tiers.   (ECF No. 37-11 at 13). Cell B-10 was located on the top tier; cell B-1 was located on the bottom tier.   *Id.*   Inmates housed in the two tiers were not released from their cells at the same time.   *Id.*   One tier was be released in the morning for one-half of the day and the other tier was released in the afternoon for one-half of the day.   *Id.*   As a result, Smothers had never associated with Wheeler.   *Id.*   Smothers was unaware of Wheeler having incidents with other inmates.   *Id.* at 15.

According to Smothers, both Sergeant Willis and Corporal Atwell had problems with him. (ECF No. 37-11 at 13-14).   When Corporal Atwell called Smothers up to talk to him about the pending rape charge, Smothers testified he refused to admit that he had raped anyone.   *Id.* at 14. Corporal Atwell's response was to tell Smothers he "would either confess to it, or he would charge me with some 13-year-old girl out of Valley Springs."   *Id.*   Smothers states he would respond by saying he wanted to go back to his cell.   *Id.*   According to Smothers, Corporal Atwell did not want to let Smothers go back to his cell but Morgan Clemence intervened and had Smothers taken back to his cell.   *Id.*

In his deposition, Smothers testified that Sergeant Willis indicated he was moving him because he was attempting to be a pod boss.   (ECF No. 37-11 at 9).   According to Smothers, Sergeant Willis said "he was going to fix my tough ass.   He was going to put me in a cell with Christopher Wheeler, who liked to diddle himself and touch his cellies."   *Id.*   Smothers says that Sergeant Willis had taken him up to booking to tell him this.   *Id.*   Administrator Day was present and Smothers asked him to intervene.   *Id.*   Administrator Day replied that he "didn't go above his officers, that it was between" Smothers and Sergeant Willis.   *Id.*   Officer Atwell, Corporal

2

Kelley, and possibly Jason Silva were in the booking room at the time. *Id.* at 10.

When Smothers was moved into Wheeler's cell, he told Wheeler that they would not have any problems "as long as he kept his hands to himself and stayed respectful." (ECF No. 37-11 at 16). Smothers described Wheeler as being a "really very elderly man . . [who was] a little bit slow." *Id.* Smothers indicated that the first thing Wheeler did was tell Smothers how good he smelled after his shower. *Id.* at 17. Wheeler indicated he did not mean anything by the statement, "[b]ut that it wouldn't be gay if [Smothers] let me put [his] thing in my mouth." *Id.* Smothers "got on [Wheeler] about it." *Id.* Wheeler continued propositioning Smothers "to give me oral sex, to touch—to touch my—you know what I'm saying? Like, over and over." *Id.* at 34. Wheeler also said "crazy, out-of-the-way stuff." *Id.*

Smothers filed a grievance on June 22, 2020, reporting that when he was moved to Wheeler's cell Sergeant Willis said that Wheeler, "liked to masturbate on his cell mates and that [it] would serve me right." (ECF No. 37-2 at 17). Smothers stated that Wheeler was mentally handicapped; his hygiene was unacceptable; and he touched himself at inappropriate times. *Id.* Smothers also grieved that Corporal Atwell said an investigation could take up to four weeks, during which Smothers had to remain housed with Wheeler. *Id.* Smothers submitted a second grievance that same day. (ECF No. 37-3 at 28). Smothers indicated he had been sexually propositioned by Wheeler. *Id.* After asking to file a complaint under the Prison Rape Elimination Act ("PREA") and to be separated from Wheeler, Smothers states his requests were denied. *Id.* Smothers said he was told he would go back in the cell with Wheeler or "be hog tied and forced" into the cell with him. *Id.* Smothers asked to be moved immediately. *Id.* On June 30, 2020, Jail Administrator Day responded that Smothers had been interviewed by an investigator.

3

*Id.* at 29.

On June 23, 2020, when he woke up, Smothers testified Wheeler "was standing over my bed masturbating." (ECF No. 37-11 at 18). Smothers then informed staff what was occurring and stated that it would be a PREA matter but they refused to let him change cells. *Id.* According to Smothers, two inmates, Tom Barber, and George Davis, told him that Wheeler had done similar things to them. *Id.* at 19. Smothers testified Wheeler had a history of doing similar things to other inmates. *Id.*

By affidavit, Jail Administrator Day states that Wheeler "did not have a history of assault on other inmates sexually. To my knowledge, [Wheeler] has never been accused of assaulting another inmate." (ECF No. 37-1 at 2). Interestingly, Sergeant Willis and the other Defendants do not make any similar statements in their affidavits. (ECF No. 37-8 at 1-2 (Sergeant Wills); ECF No. 37-9 at 1-2 (Jailer Atwell); ECF No. 37-10 at 1-2 (Corporal Atwell)).

As a result of the incident on June 23, 2020, Smothers took his property out of the cell on and refused to go back in the cell. (ECF No. 37-11 at 19). He was able to be out of the cell until 3:00 p.m. that day. *Id.* at 21. Smothers first told staff, Sergeant Willis, Officer Atwell, Corporal Kelley, and Officer Brown, what had happened, but he was merely told to "tough it out, to deal with it." *Id.* at 21-22. When nothing was done, Smothers attempted to call the PREA number posted on the phone. *Id.* at 20-21. After he described the entire incident, Smothers states he was asked what facility he was in. *Id.* at 25. When he responded the BCDC, he was told he had called the PREA number for the Arkansas Division of Correction "and a couple other facilities." *Id.* at 27. He was told they had no authority over the BCDC. *Id.* at 25-26. He was not given the correct number to call but was informed that the BCDC should have the correct number. *Id.*

4

at 26.   Smothers submitted another grievance.   *Id.* at 22.

When Smothers was called out in the hall on June 23rd to talk with Corporal Atwell, Smothers states that Sergeant Willis and Officer Atwell were also present.   (ECF No. 37-11 at 22).   According to Smothers, Corporal Atwell said, "I was a rapist, that I deserved anything that I got."   *Id.*   When Smothers protested that he had not been convicted, Smothers reports that Sergeant Willis said he would not have been charged if he was not guilty "and that I was going to go in there and take whatever was coming to me."   *Id.*

In the June 23rd grievance, Smothers noted that prior to his move he had not been charged with any disciplinary violation, and Smothers believes Willis moved him to punish him.   (ECF No. 37-3 at 24).   Smothers further states that when he asked Jail Administrator Day to intervene in the move he refused.   *Id.*   Smothers indicated the conduct was unacceptable and he believed it was also a violation of PREA.   *Id.*   On June 24th, Jail Administrator Day responded that Smothers' story was "not truthful."   *Id.* at 25.   Jail Administrator Day said he would give Sheriff Robinson the grievance, and he advised Smothers that he should "[f]eel free to do whatever you feel you need to do which if needed we will assist you."   *Id.*

When asked why his grievance did not mention Wheeler having masturbated over him, Smothers indicated he was not trying to get anyone in trouble.   (ECF No. 37-11 at 24).   He said he just wanted out of the bad situation.   *Id.*   After he was informed, he would just have to deal with it, Smothers testified he "brought it all to the attention of the staff."   *Id.*

Smothers testified that he did remove his property from Wheeler's cell and was refusing to enter the cell to be locked down.   (ECF No. 37-11 at 10-11).   Smothers advised Sergeant Willis and Officer Atwell that "by rights, I didn't have to go back in that cell, that they could either move

me or segregate me, or they had to move . . .  Wheeler or segregate him."  *Id.* at 29.   After making this statement, Smothers testified he backed up against the wall, put his hands behind his back to show he was not being combative and did not raise his voice or make a scene.  *Id.* at 29-30.   According to Smothers, Sergeant Willis stated that Smothers could grab his stuff and go back in the cell or he was going to be pepper sprayed and hog tied.  *Id.*   Smothers again asserted he did not have to "sit in a cell where somebody was masturbating on me or sexually harassing me." *Id.* at 30.   Sergeant Willis then "took the pepper spray and put it within a half inch of my eye and blasted me straight in the right eye."  *Id.*   At the time he was sprayed, Smothers indicated Corporal Atwell was at the door laughing and Officer Atwell and Corporal Kelley, were present. *Id.*   Fellow detainees George Davis, Tom Barber, and Bryan Warren were in the area.  *Id.* at 31. Smothers was put back in the cell with Wheeler for approximately 15 minutes.  *Id.*   During this time, Smothers had access to a sink.  *Id.*   Smothers remained in B-1 with Wheeler for a week or two until he slapped Wheeler one day.  *Id.* at 33.   Smothers states he woke up and "he was doing the same thing."  *Id.*

The two were moved into B-2 which was a "camera cell."  *Id.*   They remained in that cell for another week or two until Wheeler tried to kill himself.  *Id.*   At that time, Smothers was moved out of the cell.  *Id.*

In sum, during his deposition, Smothers testified there were two incidents when he caught Wheeler masturbating over him, several incidents when Wheeler propositioned him, and several incidents when Wheeler rubbed up against him.  (ECF No. 37-11 at 34-35).   Wheeler did not touch Smothers' body in any other way.  *Id.* at 36.

According to Officer Atwell's incident report, he, Sergeant Willis, and Corporal Kelley

went into B-pod at approximately 2:05 p.m. to tell Smothers to lock-down.  (ECF No. 37-4).  According to Officer Atwell, Smothers was in the pod with his property and telling inmates he was not going to lock-down.  *Id.*  Officer Atwell indicates he and Sergeant Willis attempted to persuade Smothers to lock-down and when their efforts failed, Sergeant Willis deployed a one second stream of Oleoresin Capsicum ("OC") spray.  *Id.*  They then escorted Smothers to his cell and shut the door.  *Id.*  After about fifteen minutes, Officer Atwell escorted Smothers into booking so he could decontaminate by showering.  *Id.*  After his shower, Smothers was given a new set of clothes and escorted back to his cell.  *Id.*

Sergeant Willis' report adds a few additional facts including the presence of Officer Hanna Brown.  (ECF No. 37-4 at 4).  Sergeant Willis indicates they escorted Smothers to approximately three feet from his cell "where he stopped and refused to go any further."  *Id.*  Sergeant Willis says he tried to assist Smothers into the cell by "grabbing his shoulder when he resisted by trying to step backward and pulling away."  *Id.*

According to Sergeant Willis' affidavit, Smothers was physically resisting being placed in his cell, was making a scene, and was in "close proximity to me and he could have struck me with his hands or have a weapon on his body.   [Smothers] at one point raised his hands after he pulled away from me."  (ECF No. 37-8 at 2).  Sergeant Willis indicates he was concerned for his own safety as well as that of other officers and detainees.  *Id.*  Sergeant Willis also believed Smothers "would attempt escape since he repeatedly verbalized refusal to enter his cell."  *Id.*  It was at this point that Sergeant Willis deployed a "one second stream of OC spray to contain Inmate Smothers and place him in his cell."  *Id.*  Sergeant Willis denies ever telling Smothers that "he deserved any type of harassment or assault from another inmate."  *Id.*

7

Smothers was given a disciplinary following this incident.  (ECF No. 37-4 at 2).  The disciplinary incident report indicates the evidence available included the officers' reports and a video.  *Id.*  Defendants have submitted a detainee discipline form that contains various categories of offenses.  *Id.* at 5.  The form was signed by Smothers and Sergeant Willis on June 25, 2020. *Id.* at 6.  The form consists of a listing of all possible disciplinary violations; the disciplinary violations at issue, six in total, were apparently highlighted resulting in legibility problems.  *Id.* at 5-6.  The three Category I offenses are illegible.  *Id.* at 5.  The remaining three offenses are partially legible.  *Id.* at 6.  The Category II offenses are "4) conduct which disrupts or interferes with ... and 8) refusal to obey an order of any ...."  *Id.*  The Category III offense is "6) insolence or disrespect ...."  *Id.*  The disciplinary hearing report summary indicates Smothers and Sergeant Willis were both present and a copy of the disciplinary report and officer's report had been provided to the hearing officer.  *Id.* at 7.  The report indicates Smothers was found guilty and placed in indefinite lock-down with a bi-weekly review.  *Id.*

Corporal Atwell, with the Criminal Investigation Division, was asked to investigate the alleged sexual assault on Smothers.  (ECF No. 37-5 at 1).  According to his report of June 23, 2020, Corporal Atwell was advised that Smothers reported being sexually harassed and assaulted by Wheeler.  *Id.*  Corporal Atwell first interviewed Smothers.  *Id.*  Smothers "stated his cell mate Wheeler would play with his penis while facing him, say nasty things to him and attempt to touch him."  *Id.*  Smothers reported that Wheeler washed his testicles in the sink.  *Id.*  Smothers stated he reported Wheeler's conduct to jail staff but nothing was done.  *Id.*  Smothers asked Corporal Atwell if he could get him moved to another cell.  *Id.*  Corporal Atwell advised Smothers he was not in charge of cell assignments and that Smothers would need to discuss any

8

move with Jail Administrator Day.   *Id.*

Corporal Atwell was apparently involved in Smothers' initial arrest.   Specifically, Smothers maintains that Corporal Atwell had him arrested on false charges.   (ECF No. 37-5 at 1). However, Corporal Atwell advised Smothers that he had only filed the probable cause affidavit and Smothers should talk to his attorney and the judge about whether he was guilty of the charge of rape.   *Id.*

Corporal Atwell next spoke to Wheeler.[1]   (ECF No. 37-5 at 1).   Wheeler denied having touched Smothers on "any part of his body."   *Id.*   Wheeler indicated the only reason Smothers would see him "washing his privates" was because of the small size of the cell and there being no privacy wall.   *Id.*   Wheeler accused Smothers of trying to argue and fight with him.   *Id.* Wheeler further indicated Smothers asserted that he was not a child rapist like Wheeler and that he would not remain in the cell with Wheeler.   *Id.*

Corporal Atwell indicates he spoke with "several other inmates in general population" who "all stated [S]mothers was trying to get moved out of [Wheeler's] cell because he did not like him, and he was a 'nasty old man.'"   (ECF No. 37-5 at 1).   In his affidavit, Corporal Atwell adds that the inmates reported that Smothers' allegations concerning Wheeler were false.   (ECF No. 37-10 at 1).   Corporal Atwell then advised Smothers that no charges would be filed due to the lack of evidence.   (ECF No. 37-5 at 1).   At that time, Smothers indicated he was not going back into Wheeler's cell.   *Id.*   When Corporal Atwell advised that he had no control over that, "Smothers began to scream and yell 'he was not going back into his cell.'"   *Id.*

On July 13, 2020, Smothers submitted a grievance saying the PREA number posted in the

---

[1] The report actually contains the name Walker.   (ECF No. 37-5 at 1).   However, it is clear that this was a mistake. *Id.*

pod was not current.   (ECF No. 37-3 at 32).   On August 17, 2020, Smothers submitted a grievance saying he had never lied or been dishonest about any incident involving Wheeler.   (ECF No. 37-3 at 34).   Smothers also stated it was illegal for the BCDC not to have the PREA numbers posted in the pod in clear view of the phones.   *Id.*   On August 18, 2020, Jail Administrator Day responded that the PREA number is "posted on the phone in back and you were pulled up many times to call and even given the numbers requested."   *Id.* at 35.

On August 21, 2020, Smothers indicated he was filing a Section 1983 case for sexual harassment and excessive force because he was put in a situation where Sergeant Willis knew he would be sexually assaulted by Wheeler.   (ECF No. 37-3 at 36).   Smothers indicates his complaints were ignored by staff.   *Id.*   Smothers again mentioned the PREA number listed in the pods was not current.   *Id.*   Jail Administrator Day responded that an investigation had been done where witnesses were interviewed.   *Id.* at 37.   Further, he said that Smothers had been brought up to the office multiple times and given the numbers to call.   *Id.*

Following the use of the spray, Smothers' right eye became infected and was draining "yellow pus or whatever."   (ECF No. 37-11 at 36).   He was given antibiotic eyedrops.   *Id.*   The vision in his right eye did not come back for six or eight weeks.   *Id.* at 37.   Prior to this, he had no vision problems.   *Id.*   Smothers maintains the spray was used "within a half inch of [his] eye."   *Id.* at 38.

The Boone County Sheriff's Office use of force policy provides that "[d]etention officers shall use the minimum amount of non-deadly force necessary to maintain the security and control of detainees and to prevent incidents from escalating into an emergency."   (ECF No. 37-7 at 4). It further provides that "Detention Officers may only use the minimum amount of force necessary

to maintain order, restore discipline or obtain compliance with a lawful order."   *Id.*   Examples of when the use of force was permissible include: "[w]hen a detainee(s) ... are assaulting or appear likely to assault, another detainee or officer"; "[w]hen it appears that a detainee ... is or may be preparing to escape"; and "[w]hen a detainee(s) ... is disrupting the function or stability of the Detention Facility."   *Id.* at 5.   When there is no imminent threat of physical harm, officers are to use these alternatives prior to the use of force: verbal commands and persuasion; verbally inform detainee of the consequences if the behavior continues; and request assistance from other officers, "who, by virtue of their presence, may persuade the detainee ... to stop his/her behavior."   *Id.*   All uses of force are to be documented.   *Id.* at 6.

### Video Evidence from June 23, 2020

Smothers makes several trips carrying his property out of the cell that is adjacent to the shower in the top left-hand corner of the screen.   Smothers then walks around the pod and talks to several inmates.   When the three officers, Corporal Kelly, Sergeant Willis, and Officer Atwell, enter the pod, Smothers calmly goes to stand near the cell door--just to the left of the door frame with his hands behind his back.



Sergeant Willis places his hand on Smothers' right arm just above the elbow.   Smothers backs away until he is almost against the pod wall.    When he is backing, Smothers moves his hands to the front of his body and brings his left arm up.   However, Smothers was not pulling away or being combative.



Sergeant Willis brings his arm up and deploys the OC spray into Smothers' face.



Smothers is then dragged to cell B-1 and the door is locked.



## II.    APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."   *National Bank of Com. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."   *Matsushita*, 475 U.S. at 586.   "They must show there is sufficient evidence to support a jury verdict in their favor."   *Nat. Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).   "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."   *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."   *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.   DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.   To establish a claim under § 1983, Plaintiff must show defendants: (1) acted under color of law; and (2), caused the deprivation of a right established by the Constitution of laws of the United States.   *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

Defendants have moved for summary judgment on the following grounds: (1) there is no proof that Defendants failed to protect Smothers; (2) the Defendants did not use excessive force against Smothers; (3) verbal threats do not constitute a constitutional violation; (4) there is no private cause of action under PREA; (5) there is no constitutional right to receive responses to, or copies of, grievances; (6) the Defendants are entitled to the protections of qualified immunity; and (7), there is no basis for official capacity liability.

**A.  Failure to Protect**

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of ... inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998).   This duty extends to protecting prisoners from violence. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).   For pretrial detainees, this duty arises under the Due Process Clause of the Fourteenth Amendment.   *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).   However, the Eighth Circuit applies the same Eighth Amendment standards to the claims of both convicted inmates and pretrial detainees.   *Chavero-Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015).

To be sure, not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.   A failure to protect claim may be premised on an officer's failure to protect inmates from physical or sexual assault by other inmates or correction staff.   *Krout v. Goemmer*, 583 F.3d 556, 565 (8th Cir. 2009) (excessive force case).   Specifically, an "officer may be held liable if he does not intervene to prevent [sexual assault] when (1) the officer observed or had reason to know that [sexual assault] would [occur] or was [occurring], and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Robinson v. Payton*, 791 F.3d 824, 829 (8th Cir. 2015).   To meet the second prong the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon Cnty.*, 607 F.3d 543, 549 (8th Cir. 2010); *Farmer,* 511 U.S. at 834 (an official is deliberately indifferent if he or she actually knows of and disregards an excessive risk to inmate health or safety).

In this case, presuming all facts set forth by Smothers are true, the following facts are

established: (1) Smothers was subjected to verbal sexual harassment by Wheeler; (2) Sergeant Willis had knowledge that Wheeler liked to touch himself, to proposition and touch his cellmates, and to masturbate on them; (3) on several occasions Wheeler sexually propositioned Smothers, on two occasions Smothers woke to see Wheeler standing over Smothers' bed and masturbating, and on several occasions Wheeler rubbed up against him; (4) Smothers verbally and via grievance advised Defendants of these problems and asked to be moved; and (5), Smothers either did, or attempted to, file a PREA complaint.   Smothers suffered no physical injury from the sexual harassment and assault.

In the context of a claim brought by an inmate against a correctional officer, the Eighth Circuit has held that sexual harassment, without any physical contact, is insufficient to constitute the unnecessary and wanton infliction of pain prohibited by the Eighth Amendment.   *Howard v. Everett*, 208 F.3d 218 (unpublished table op.) (8th Cir. 2000).   Furthermore, the Eighth Circuit has required the existence of some actual injury in Eighth Amendment cases.   *See e.g., Irving v Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) ("Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation"); *Ellis v. Bass*, 982 F.2d 525 (8th Cir. 1992) (prisoner's *de minimus* injury insufficient to satisfy objective component of a failure to protect claim).   Thus, however deplorable, without some physical contact and at least a more than *de minimus* actual injury the claim is subject to dismissal.

Additionally, 42 U.S.C. § 1997e(e) would preclude recover of compensatory damages. Section 1997e(e) provides that, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in

custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18.[2]"   Under § 1997e(e), the prisoner may still obtain nominal and punitive damages.   Considering the case law, however, the absence of actual injury under the Eighth Amendment precludes recovery in this case.[3]

Moreover, Defendants are entitled to qualified immunity on this claim.   "Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"   *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986)).

The qualified immunity inquiry consists of two questions: "(1) whether the facts alleged or shown, construed in the light most favorable to the Plaintiff, establish a violation of a constitutional right; and (2) whether that constitutional right was clearly established as of the time of the relevant

---

[2] Section 2246(2) defines sexual act to mean contact between the penis and the vulva or anus; "contact between the mouth" and the penis, vulva, or anus; "penetration, however slight, of the anal or genital opening of another by a hand or finger or any object, with the intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person"; or the "intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."   18 U.S.C. § 2246(a).

[3] In *Farmer*, the Court rejected the "petitioner's argument that a subjective deliberate indifference test will unjustly require prisoners to suffer physical injury before obtaining court-ordered correction of objectively inhumane prison conditions."   *Farmer,* 511 U.S. at 845.   The Court stated that "[p]etitioner's argument is flawed for the simple reason that one does not have to await the consummation of threatened injury to obtain preventive relief.   Consistently with this principle, a subjective approach to deliberate indifference does not require a prisoner seeking a remedy for unsafe conditions to await a tragic event such as an actual assault before obtaining relief.   *Id.* (cleaned up).   The Court concluded the petitioner could seek injunctive relief to "prevent a substantial risk of serious injury ripening to actual harm."   *Id.*   To survive summary judgment, petitioner "must come forward with evidence from which it can be inferred that defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so.   *Id.* at 846.   In this case, Smothers is seeking a remedy for a past harm.   Thus, requiring the showing of an actual injury is not at odds with *Farmer.*

conduct such that a reasonable official would have known that his actions were unlawful." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (citation omitted).   The Court can answer the questions in either order.   *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).   A § 1983 plaintiff may defeat qualified immunity only if the answer to both questions is yes.   *Boude v. City of Ramore*, 855 F.3d 930, 933 (8th Cir. 2017) (citation omitted).   Having found no constitutional violation exists as to Smothers' failure to protect claim, Defendants are entitled to qualified immunity.   *See e.g., Kulkay v. Roy*, 847 F.3d 637, 646 (8th Cir. 2017) (finding individual defendants entitled to qualified immunity when plaintiff failed to state a constitutional violation).

## B.  Excessive Force

The objective reasonableness standard applies to excessive force claims brought by pretrial detainees.   *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).   "[T]he defendant's state of mind is not a matter that a plaintiff is required to prove."   *Id.* at 394.   A pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable."   *Id.* at 396.   The objective reasonableness of a use of force "turns on the 'facts and circumstances of each particular case.'"   *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).   This determination must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*; *see also Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017).   "[O]bjective circumstances potentially relevant to a determination of excessive force" include:

> the reasonableness or unreasonableness of the force used; the relationship between the need for the use of force and the amount of force used; the extent of plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether plaintiff was actively resisting.

18

*Kingsley*, 576 U.S. at 397 (citing *Graham*, 490 U.S. at 396).   An action is objectively unreasonable if it is not reasonably related to legitimate governmental interests, such as maintaining order and security, or is excessive in relation to that objective.   *Id.* at 398-99.

The nature or quantum of the force must be the focus of the Court's inquiries.   The absence of injury is a factor the Court considers in determining whether excessive force was used.   The Court must also keep in mind that the mere fact that injuries occurred does not support an excessive force claim if they are the result of a "*de minimus* use of force."   *Hunter v. Namanny*, 219 F.3d 825, 831 (8th Cir. 2000).

The Eighth Circuit has recognized that "summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, has been placed in jeopardy."   *Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir. 2000).   Additionally, "[t]he infliction of pain in the course of a prison security measure ... does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Failure to comply with orders may be one circumstance that justifies the use of force to gain compliance.   *See, e.g., Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011).   Whether non-compliance alone justifies the use of force depends on the surrounding circumstances, such as whether the inmate is confined to a cell or already restrained in some manner as opposed to being free to move about.   It also may depend on the order given.   Obviously, an order to cease fighting would be much more likely to justify the use of force than an order for an inmate to sweep his cell. In the first example, there is clearly a legitimate concern for maintaining order and discipline and

19

for the safety and security of inmates and staff.   In the second example, the order is merely to enforce jail housekeeping rules.   *See, e.g., Hickey v. Reeder*, 12 F.3d 754, 758 (8th Cir. 1993) (not objectively reasonable to use stun gun to gain compliance with an order to an inmate to sweep his cell).

In *Hickey*, the Eighth Circuit rejected the argument that "the Constitution permits the use of summary force to compel compliance with any direct order given in a jail setting, and that such authority is necessary to maintain control of the institution."   *Id.* at 759.   It stated that Defendants' argument "represents a fundamental misunderstanding of the law concerning the use of summary force in prison settings.   The law does not authorize the day-to-day policing by stun gun."   *Id.*   The Eighth Circuit concluded that "summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, has been placed in jeopardy."   *Id.*; *see also Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014) (clearly established that force used against inmates who were lying submissively, face-down would violate the Eighth Amendment); *Thompson v. Zimmerman*, 350 F.3d 734, 735 (8th Cir. 2003) (inmate no longer yelling or kicking the doors—no basis for a reasonable officer to believe force was needed at the time to prevent detainee from endangering himself or others); *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989) (force may be justified to make an inmate comply with a lawful order, but only if the inmate's noncompliance poses a threat to other persons or to prison security).

In this case, there are substantial factual disputes regarding the necessity of use of force. The video provided shows the physical actions taken but there is no audio.   In this case, the parties present significantly different statements about the content of the conversation between the parties. The substance of the conversation in addition to the physical actions is necessary to show whether

20

Sergeant Willis' "actions were defensive in nature ... or motivated by anger; whether they were necessary to maintain order or were excessive reactions by frustrated officers, and whether the amount of force was commensurate with the situation." *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006).

The existence of genuine issues of material fact precludes summary judgment in Sergeant Willis' favor. Jailer Atwell, however, did not administer the spray or use any force against Smothers. Jailer Atwell is therefore entitled to summary judgment. None of the remaining Defendants were involved with the use of force and are also entitled to summary judgment.

Further, Sergeant Willis is not entitled to qualified immunity. The factual account offered by Smothers in addition to the physical actions taken as shown in the video, create a genuine issue of material fact as to whether a reasonable officer could have believed it was appropriate to use OC spray. "If there is a genuine dispute concerning predicate facts material to the qualified immunity issue, a district court must deny summary judgment." *Watson v. Boyd*, 2 F.4th 1106, 1109 (8th Cir. 2021). Clearly, that is the case here.

## C.  Grievances

To the extent Smothers is asserting a claim because he did not receive grievance responses or copies, his claim fails. "Inmates do not have a constitutionally protected right to a grievance procedure. Because a ... grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the grievance procedure is not actionable under § 1983." *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (citation omitted). Therefore, a prison officials' failure to respond to an inmate's grievances or to return copies of those grievances to that inmate, without more, is not actionable under §1983." *Id.*

### D.  PREA

Section 1983 does not create any substantive rights.  Rather, it provides a remedy for violations of constitutional rights or rights created under federal law.  *Tarsney v. O'Keefe*, 225 F.3d 929, 939 (8th Cir. 2000).  While there appear to be no Eighth Circuit decisions on point, it is clear PREA, 34 U.S.C. §§ 3030 *et seq.*, does not create a private cause of action.  *Krieg v. Steele*, 599 F. App'x 213, 232-33 (5th Cir. 2015); *Wilmoth v. Sharp*, No. 6:15-cv-06057, 2018 WL 1092031, *3 (W.D. Ark. Feb. 27, 2018); *Miller v. Griffith*, No. 4:16-cv-539, 2016 WL 1718229, *2 (E.D. Mo. Apr. 28, 2016).  Therefore, any claim raised under PREA is properly dismissed as frivolous.

### E.  Verbal Harassment

"[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment."  *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted).   However, mere verbal harassment has been held not to constitute a violation of the Eighth Amendment.   In an unpublished decision, *Howard v. Everett*, 208 F.3d 218, *1 (8th Cir. 2000) (Table), the Eighth Circuit noted that although "sexual comments and gestures were reprehensible," that "sexual harassment, absent contact or touching, does not constitute the unnecessary and wanton infliction of pain."   *Id.*   Similarly, verbal harassment in general has been held not to be cognizable under § 1983.   *See McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actional under § 1983).

22

### F.  Due Process

Smothers also contends Sergeant Willis denied him Due Process when he was moved to Wheeler's cell.   Defendants have not separately addressed this claim in their summary judgment motion.

Pretrial detainees are presumed innocent and cannot be punished for the crime for which they have been charged.   *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979).   "[T]he effective management of the detention facility once the individual is confined is a valid objective that may justify the imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment."   *Id.* at 540.   Conditions or restrictions that are "reasonably related to a legitimate governmental objective" such as institutional order and security do not amount to punishment.   *Id.* at 539-40; *see also Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992) ("We do not quarrel with the prison's need to segregate individual inmates from the general prison population for non-punitive reasons; for example ... where there is a threat to the safety and security of the institution").   If the conditions or restrictions are deemed punishment, the pretrial detainee is entitled to due process.   When a detainee "is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, then due process requires some kind of hearing beforehand."   *Id.*

Smothers was not moved due to a disciplinary conviction.   Presuming Smothers' assertions are true, he was moved to punish him because of his pending rape charge.   While Sergeant Willis has proffered a valid reason for moving Smothers from the tier he was originally assigned to, there are genuine issues of material fact regarding the placement of Smothers in Wheeler's cell.   Thus, Sergeant Willis is not entitled to summary judgment on this claim.   As for

the remaining Defendants, however, Smothers makes no argument they were involved in the decision to place him in Wheeler's cell.   Rather, he merely contends they did not over-rule Sergeant Willis' decision.   To establish liability under § 1983, Smothers must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006).   Therefore, the remaining Defendants are entitled to summary judgment on this claim.

Sergeant Willis is not entitled to qualified immunity on this claim.   If Smothers is believed, a constitutional violation exists because he was placed in Wheeler's cell as punishment for his pending rape charge.   If Sergeant Willis is believed, no constitutional violation exists. Thus, questions of fact dictate denial of qualified immunity.

### G.  Official Capacity Liability

An official capacity claim is considered a claim against the employing governmental entity, here, Boone County, Arkansas.   *Crawford v. Van Buren Cnty.*, 678 F.3d 666, 669 (8th Cir. 2012). "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise."   *Corwin v. City of Indep., Mo.*, 829 F.3d 695, 699 (8th Cir. 2016) (citations omitted).

Here, Smothers has pointed to no official Boone County policy, custom, or a failure by Boone County to train or supervise its employees.   Therefore, no basis for official capacity liability exists.   *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (liability can only be established by demonstrating the existence of a policy, custom, or failure to train or supervise).

## IV.    CONCLUSION

For the reasons and upon the authorities discussed above, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 35) be **GRANTED IN PART AND DENIED IN PART.**

Specifically, the Motion should be **GRANTED** with respect to the following claims:

1.   The failure to protect claim.

2.   The failure to respond to, or provide copies of, grievances claim.

3.   The claim under the Prison Rape Elimination Act.

4.   The verbal harassment claim.

5.   The official capacity claims.   And,

6.   All claims against Corporal Gene Atwell, Jailer Trevor Atwell, and Jail Administrator Jason Day.

The Motion should be **DENIED** with respect to the following claims:

1.   The individual capacity excessive force claim against Sergeant Willis.

2.   The individual capacity Due Process claim against Sergeant Willis.

These two claims remain for trial before the Honorable United States District Judge Timothy L. Brooks.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

25

DATED this 14th day of June 2022.

/s/ *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE